309 So.2d 579 (1975)
John H. KEANE, Appellant,
v.
PAN AMERICAN BANK, Formerly Known As Citizens Bank and Trust Company, and Charles W. Moxley, Appellees.
No. 74-694.
District Court of Appeal of Florida, Second District.
March 19, 1975.
Rehearing Denied April 4, 1975.
*580 Charles J. Cheves, Jr. of Cheves & Hazen, Venice, for appellant.
John M. Hodges of Bernstein, Sherr, Hodges, Lancer & Brand, Sarasota, and David M. Mitchell, of Harkavy, Moxley & Mitchell, Sarasota, for appellees.
GRIMES, Judge.
On January 1, 1971, the law firm of HARKAVY, MOXLEY & KEANE was dissolved. John Keane, the appellant here, left the firm, and Martin Harkavy and Charles Moxley continued to practice together under the name of HARKAVY & MOXLEY. Prior to the dissolution, the firm of HARKAVY, MOXLEY & KEANE maintained a business account at appellee Pan American Bank. The signature of any one of the three firm members was sufficient to deposit or withdraw funds. After the dissolution, the account was kept open for the purpose of depositing receivables of the former firm, though Keane said that he was not aware that the account was still open.
In May 1971, a check payable to "JOHN H. KEANE and CHARLES W. MOXLEY" in the amount of $16,500.00 was received by Harkavy. The check represented partial payment for work done by the firm in the "Buhl matter." The matter had not been concluded when the old firm was dissolved. Keane learned of the existence of the check in June 1971. In early August Harkavy instructed his bookkeeper to deposit the check in the HARKAVY, MOXLEY & KEANE account. The bookkeeper rubber-stamped the check "For Deposit Only HARKAVY, MOXLEY & KEANE 035-602", and the bank deposited the proceeds in the HARKAVY, MOXLEY & KEANE account. On August 24, 1971, Karkavy and Moxley withdrew $16,500.00 from the HARKAVY, MOXLEY & KEANE account and deposited it in the HARKAVY & MOXLEY account.
Keane sued the bank and Moxley alleging conversion. Following a non-jury *581 trial, the court entered judgment for defendants without making findings of fact or conclusions of law.
The judgment may be upheld on two grounds. First, it appears that while the old firm was in existence, checks payable to individual firm members were often endorsed by the rubber stamp and deposited into the firm account. Since an endorsement may be made by an agent[1] and the agent's authority may be actual, implied or apparent,[2] there is sufficient evidence to support the conclusion that apparent authority existed for the affixing of the rubber stamp in lieu of Keane's signature. At no time did Keane ever put the bank on notice that the practice of using the rubber stamp was no longer authorized.
The record further supports the defense predicated upon Fla. Stat. § 673.419(3) (1971).[3] There was expert testimony to the effect that under the circumstances the handling of the check in this manner was in accord with reasonable commercial standards. While the bank knew the firm had dissolved, it was logical for its account to be kept open for the purpose of depositing fees which were subsequently collected for services rendered by the old firm. Keane's name remained as an authorized signatory, and the fact that the authorization to draw checks on the account was changed to require two signatures was not such as to dictate an inquiry into the propriety of processing this check in the same manner as similar checks in the past had been handled.
The question of who is entitled to the $16,500.00 represented by the Buhl check is a matter which must be resolved between the former law partners. We are advised that an accounting action is now pending for this purpose. Our decision in this case should not be construed as passing upon the merits of that controversy.
Affirmed.
McNULTY, C.J., and BOARDMAN, J., concur.
NOTES
[1] Fla. Stat. § 673.403 (1971).
[2] See Fla. Stat. § 671.201(43) (1971).
[3] "(3) Subject to the provisions of this code concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."